Lofton-RD v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-264-CR

        RONALD RAY LOFTON,

                                                                                       Appellant
        v.

        THE STATE OF TEXAS,

                                                                                       Appellee
 

From the 82nd District Court
Falls County, Texas
Trial Court # 6615
                                                                                                    

O P I N I O N
                                                                                                    

          The appellant, Ronald Ray Lofton, was convicted of possession of less than 28 grams of
a controlled substance and sentenced to 12 years in prison. See Tex. Health & Safety Code
Ann. §§ 481.102(3)(D), 481.115 (Vernon 1992). Lofton brings this appeal pro se and argues
that: 1) his trial counsel failed to render reasonably effective assistance; 2) the trial court erred in
denying his motion to suppress because the contested evidence was obtained as a result of an
illegal search and seizure; and 3) his trial counsel abandoned Lofton's appeal and thereby denied
him due process. For the following reasons, we affirm.
          On September 3, 1993, at around two in the morning, Marlin Police Officers Terry King
and Bobby Searcy were dispatched to a home on Marlin Street where it was reported by the
owner, Paul Humphrey, that a burglary was in progress. When the officers arrived at the address,
they arrested a subject inside the house. After Officers King and Searcy had secured the suspect,
Humphrey told the officers that there were three people sitting in a car parked half a block down
the street that he believed were also involved in the burglary. He stated that he had never seen
the car before and that none of the occupants lived in the neighborhood. The defendant, Lofton,
was in the driver's seat of the automobile. Lofton started the automobile and began driving down
the street in the direction of Humphrey's house. Officer King motioned for the vehicle to stop,
and Lofton put his vehicle in park and stepped out of the car. Officer King asked him for his
driver's license, and Lofton replied that he did not have a license or any other form of
identification with him. Officer King then testified that he noticed a bulge in Lofton's shirt pocket
and that he had several pieces of paper stuffed into it. Officer King thought perhaps he had some
identification in his shirt, and asked Lofton what was in his pocket as he casually touched the
outside of it. Lofton responded by knocking his hand away. At this point, Officer King decided
to arrest Lofton for being unable to produce a valid driver's license. After Officer King had
arrested Lofton, he searched him and removed the contents of the shirt pocket. Officer King
testified that he found a mass of papers and a glass "crack pipe" in the pocket. Once the officers
had transported Lofton to jail, Officer King went through the papers and found a piece of paper
that had been folded up. When he opened the paper, he found a white powdery substance that was
later determined to be cocaine. Lofton was charged and convicted of possession of a controlled
substance and sentenced to twelve years in prison. 
          In his first point, Lofton argues that his trial counsel provided ineffective assistance of
counsel. Specifically, he claims that counsel failed: 1) to investigate the facts of the case and to
call witnesses in Lofton's favor and 2) to object to the insufficient corroboration of a witness's
testimony. 
          The right to effective representation is guaranteed under both the federal and state
constitutions. U.S. Const. amend VI; Tex. Const. art. I, § 10. The United States Supreme
Court established the federal constitutional standard for determining ineffectiveness of counsel in
Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064 (1984). The Texas Court
of Criminal Appeals adopted the Strickland standard in Hernandez v. State, 726 S.W.2d 53, 57
(Tex. Crim. App. 1986). 
          To show counsel was ineffective, the complaining party must show by a preponderance of
the evidence that: 1) trial counsel's performance was deficient because it fell below an objective
standard of reasonableness and 2) that there was a reasonable probability that, but for counsel's
errors, the results of the proceedings would have differed. Rodriguez v. State, 899 S.W.2d 658,
664 (Tex. Crim. App. 1995). Such allegations will only be sustained if they are firmly rooted in
the record. Smith v. State, 676 S.W.2d 379, 385 (Tex. Crim. App. 1984), cert. denied, 471 U.S.
1061, 105 S.Ct. 2173 (1985). In making this determination, the reviewing court must look at the
"totality of the representation, rather than solely at isolated acts or omissions of the trial counsel." 
Rodriguez, 899 S.W.2d at 665. Moreover, the representation of the defendant should be viewed
from the defense counsel's perspective at trial, and not with 20-20 hindsight. Strickland, 466 U.S.
at 689, 104 S.Ct. at 2065. There is a strong presumption that trial counsel's performance fell
within the wide range of acceptable professional assistance. Jackson v. State, 877 S.W.2d 768,
771 (Tex. Crim. App. 1994).
          Lofton claims that his trial counsel failed to investigate the facts of the case and to call
witnesses in Lofton's favor. The record does not support Lofton's contention that his attorney did
not investigate the facts of the case. In addition, the record is silent as to why his trial counsel
failed to call any witnesses in Lofton's favor. However, we do not need to speculate as to what
counsel did or did not do in order to dispose of this point. Id. 
          Due to the lack of evidence in the record concerning trial counsel's reasons behind not
calling witnesses or whether he investigated the facts, we are unable to find that trial counsel's
performance was deficient. There is a strong presumption that trial counsel's decisions were part
of a sound trial strategy. Id. (citing Strickland, 466 U.S. at 689, 104 S.Ct. at 2065). 
"Consistently with Strickland, we must presume that counsel is better positioned than the appellate
court to judge the pragmatism of the particular case, and that he 'made all significant decisions in
the exercise of reasonable professional judgment.'" Jackson, 877 S.W.2d at 771 (quoting Delrio
v. State, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992)). Lofton cannot show that his trial
counsel was ineffective in this regard. 
          Lofton also claims that his trial counsel did not object to the insufficient corroboration of
Humphrey's testimony at trial. Lofton cites no authority for this rule, but he apparently is
referring to the accomplice-witness rule. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon
1979). Humphrey is not an accomplice to the crime, and therefore, his testimony does not need
corroboration. We find that the evidence was relevant and properly admitted at trial. Tex. R.
Crim. Evid. 401. We are unable to conclude that Lofton received ineffective assistance from his
trial counsel. Lofton's first point is overruled. 
          In his second point, Lofton claims that the trial court erred in denying his motion to
suppress because the contested evidence was obtained as a result of an illegal search and seizure. 
In a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and the
weight to be given to their testimony. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App.
1990). On appeal, the reviewing court is limited to determining whether, viewed in the light most
favorable to the trial court's ruling, the trial court erred in applying the law to the facts. Id. The
totality of the circumstances is considered in determining whether the trial court's findings are
supported by the record. Absent a showing of an abuse of discretion, we will not disturb the trial
court's findings. Dancy v. State, 728 S.W.2d 772, 777 (Tex. Crim. App. 1987), cert. denied, 484
U.S. 975, 108 S.Ct. 485 (1987); Flores v. State, 895 S.W.2d 435, 440 (Tex. App.—San Antonio
1995, no pet.). 
          Law enforcement officials may stop and briefly detain individuals suspected of criminal
activity on less information than is constitutionally required for probable cause to arrest. See
Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880 (1968); Flores v. State, 895 S.W.2d at 440. 
Under a Terry investigative stop, officers are entitled to briefly question a suspicious person
regarding his identity, his reasons for being in the area, and to make any other reasonable inquiry
of an investigative nature. Id. 
          In order "[t]o justify this temporary detention, an officer must have specific, articulable
facts which, considering his experience and personal knowledge and his inferences from those
facts, would reasonably warrant an intrusion on the freedom of the citizen stopped for
investigation." Id. Furthermore, suspicious activity connected with a crime must be occurring
or have occurred, and the individual stopped for investigation must somehow be connected with
this activity. Id. Once a suspect has been lawfully detained, the officer is entitled to make a
limited search of the individual for weapons if the officer has a reasonable belief that the suspect
is potentially dangerous to him. 
          In the present case, Officers King and Searcy were responding to a burglary in progress
at a residence. The owner, Paul Humphrey, stated that he thought the occupants of the car parked
half a block down the street were involved in the burglary. He stated that he did not recognize
the car and that he did not think that anyone in the car lived in the neighborhood. In addition,
Officers King and Searcy found a large amount of Humphrey's personal belongings stacked by the
back of the house. Officer King testified that he believed that the suspect detained in the house
must have had an accomplice because he would need help to remove all of the possessions from
the home. We find that the officers had a reasonable suspicion to believe that Lofton was involved
in the burglary and were justified in making an investigatory stop to determine if he was involved. 
Once Lofton had been stopped, Officer King was entitled to question Lofton about his identity. 
          Once a person has been legally detained, an officer may make an arrest for any offense
discovered during the investigative detention. Gaines v. State, 888 S.W.2d 504, 510 (Tex.
App.—El Paso 1994, no pet.). When Officer King asked for Lofton's driver's license, he was
unable to produce it. It is a misdemeanor, and an arrestable offense, for a person to operate a
motor vehicle without having a driver's license in his immediate possession. Snyder v. State, 629
S.W.2d 930, 934 (Tex. Crim. App. 1982); Gaines, 888 S.W.2d at 510; see Act of August 28,
1967, 60th Leg., R.S., ch. 328, § 7, 1967 Tex. Gen. Laws 778, 781-82, repealed by, Act of
September 1, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1870, 1871 (current
version at Tex. Transp. Code Ann. § 521.025(c) (Vernon supp. 1996)). 
          Once Lofton had been taken into custody for the license violation, the police were entitled
to perform a search incident to an arrest to make an inventory of his belongings or for security
reasons. Rogers v. State, 774 S.W.2d 247, 264 (Tex. Crim. App.), cert. denied, 493 U.S. 984,
110 S.Ct. 519 (1989). We find that the officers' initial detention of Lofton was proper based on
the reasonable suspicion that he was involved in the burglary. Moreover, the subsequent legal
arrest for not possessing a driver's license permitted the officers to conduct a valid search incident
to an arrest. The evidence taken from Lofton's person was legally seized. Therefore, we find that
the trial court properly denied Lofton's motion to suppress the evidence. Lofton's second point
is overruled.
          In his third point, Lofton claims that his trial counsel abandoned his appeal and thereby
denied him due process. The court imposed Lofton's sentence on April 29, 1994. On August 26,
the transcript was filed in this court. However, Lofton's trial counsel failed to file a statement of
facts or a brief in the allotted time. Because no brief was filed, we abated this cause to the trial
court for a hearing to determine if trial counsel had abandoned the appeal and whether Lofton
desired to proceed with the appeal. At the hearing, evidence was admitted that counsel had in
effect abandoned the appeal. Counsel testified that he believed that Lofton had received "a very
good sentence," and he further stated that he did not file a brief because he did not want to
prejudice Lofton's right to pursue the appeal pro se. Moreover, once it had been determined that
trial counsel had abandoned his appeal, Lofton testified that he wanted to pursue the appeal pro
se. 
          We find that this point is moot. Lofton has been given the opportunity to present his case
before this court in an out of time appeal. He is not entitled to any further relief. Lofton's third
point is overruled. We affirm the judgment of the trial court.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Justice Cummings 
          and Justice Vance
Affirmed
Opinion delivered and filed May 15, 1996
Do not publish 



 points.
      In point five of case one and point seven of case two, Buttacavoli asserts that the court erred
in overruling his objection to the prosecutor's informing the jury of prior convictions during voir
dire. The following dialogue took place during defense counsel's voir dire:
[DEFENSE]: . . . And [Buttacavoli] has filed a sworn application for probation, many, many
months before today, saying he's never before been in any trouble. And there's a reason why
you file a sworn application for probation—that means under oath.
[STATE]: Your Honor, he's filed no application saying he's never been in any trouble. 
Absolutely a misstatement.
[DEFENSE]: Your Honor, we filed a sworn application.
[STATE]: I think it says convicted of a felony. I never heard of --
[DEFENSE]: If he's got anything to the contrary, Your Honor, I challenge him to offer it.
[STATE]: I will be happy to do that at the punishment phase, Your Honor.
THE COURT: You may proceed.
Defense counsel continued with his voir dire. After a lunch recess, outside the presence of the
jury, defense counsel challenged the prosecutor to produce evidence of prior misconduct. Defense
counsel moved for a mistrial. The court did not rule on the motion for mistrial, but indicated that
he would reconsider the motion if the State did not present evidence of a prior criminal record. 
      Buttacavoli complains on appeal that the court erred in overruling his objection to the State's
informing the jury of prior convictions. To preserve a complaint for appellate review, a party
must have presented to the trial court a timely objection and obtain a ruling. Tex. R. App. P.
52(a). Trial counsel did not object until thirty-five pages later in the record after the complained-of comments were made—after a lunch break. To be timely, an objection must be raised at the
earliest opportunity or as soon as the ground of objection becomes apparent. Zimmerman v. State,
860 S.W.2d 89, 100 (Tex. Crim. App. 1993). The complaint was not preserved for our review. 
We overrule the points.
      In point six of case one and point eight of case two, Buttacavoli complains that the court failed
to apply the law to the facts in the charge concerning the traffic stop. Paragraph six of the charge
instructed the jury on reasonable suspicion in a temporary investigative detention. Paragraph six
further instructed the jury that, if it found that the police officer did not have a reasonable
suspicion based on articulable facts that Buttacavoli was travelling without a seatbelt, it should
disregard the officer's testimony and his conclusions drawn as a result of the stop. We find that
the charge adequately applied the law to the facts. We overrule the points.
      In point seven of case one and point nine of case two, Buttacavoli complains that the court
erred in failing to instruct the jury on the definition of arrest. Buttacavoli's Requested Jury
Instruction No. 1 included the following paragraphs:
In that connection, you are instructed that a police officer may, without a warrant, arrest an
offender for any offense committed in his presence or within his view.
 
You are further instructed that the person is considered under arrest when he has actually been
placed under restraint or his freedom of movement has been significantly impaired by a police
officer's show of authority.
The State suggested that a definition of arrest should be given in the charge and the court included
Buttacavoli's definition. Buttacavoli requested that his definition of arrest be deleted from the
charge if it was not "given in the context of the alleged failure to wear a seatbelt on a probable
cause standard." Buttacavoli requested that the definition be deleted if the court was going to
"erroneously appl[y] the reasonable suspicion standard to the seatbelt stop." The court removed
the instruction on arrest.
      We held above that the court did not err in instructing the jury on "reasonable suspicion"
rather than "probable cause" to detain Buttacavoli on the seatbelt violation. Buttacavoli requested
the removal of the definition of arrest. Having received the relief he requested, he cannot now
complain of the court's action. See Capistran v. State, 759 S.W.2d 121, 124 (Tex. Crim. App.
1982); State v. Manning, 833 S.W.2d 322, 324 (Tex. App.—Waco 1992, no pet.). We overrule
the points.
      In point eight of case one and point ten of case two, Buttacavoli complains that the court failed
to properly instruct the jury on probable cause. The court's charge read:
By the term "probable cause," as used herein is meant where the facts and circumstances
within the officer's knowledge, and of which he has reasonably trustworthy information, are
sufficient unto themselves to warrant a man of reasonable caution to believe that an offense
has been or is being committed.
The court denied Buttacavoli's Requested Jury Instruction No. 2 that read:
You are further instructed, however, that a police officer's good faith belief does not rise to
the level of "probable cause" if it amounts to nothing more than suspicion that is based upon
an inarticulate hunch. In other words, "probable cause" does not exist where the facts known
to the officer make it just as reasonable to indulge in the belief that an offense was not being
committed.
      The State argues that the definition of probable cause that was given was taken verbatim from
Jury Charges for Texas Criminal Practice. See Paul J. McClung, Jury Charges for Texas
Criminal Practice 300 (1993). A similar definition is suggested in section 10.106[2] of the
Texas Criminal Practice Guide. Marvin O. Teague & Barry P. Helft, 1 Texas Criminal
Practice Guide § 10.106[2] (1993). We do not find that the court erred in failing to give the
requested instruction. We overrule the points.
      In point two of case two, Buttacavoli asserts that the evidence is insufficient to convict him
of possession of cocaine. Evidence will sustain a conviction if, viewing it in the light most
favorable to the verdict, any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2788-89, 61 L.Ed.2d 560 (1979); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). 
      A defendant must exercise care, custody, control, and management over illicit drugs, knowing
them to be drugs, before he is guilty of their possession. Dickey v. State, 693 S.W.2d 386, 389
(Tex. Crim. App. 1984). If the defendant is not in sole possession of the premises where drugs
are found, the state must prove an affirmative link between the contraband and the defendant to
establish his possession. Deshong v. State, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.]
1981). Possession of a controlled substance need not be exclusive; if the evidence shows that the
accused jointly possessed the controlled substance with another, unlawful possession is established. 
Oaks v. State, 642 S.W.2d 174, 176 (Tex. Crim. App. 1982); Brazier v. State, 748 S.W.2d 505,
507 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). An affirmative link is established by facts
and circumstances from which one may reasonably infer that the defendant knew the contraband
existed and that he exercised care, custody, control, and management over it. Dickey, 693 S.W.2d
at 389.
      After Buttacavoli's arrest, an inventory search of the vehicle revealed a cigarette box with
cocaine in the glove compartment and a plastic drinking straw with white powder residue. The
straw was found in the sun visor on the passenger's side. Monteverde's driver's license was lying
next to the cigarette box in the glove compartment. Buttacavoli was the owner and driver of the
automobile. See Deshong, 625 S.W.2d at 329; Merideth v. State, 603 S.W.2d 872, 873 (Tex.
Crim. App. [Panel Op.] 1980); Moreno v. State, 821 S.W.2d 344, 351 (Tex. App.—Waco 1991,
pet. ref'd). The contraband was found in the glove compartment of Buttacavoli's vehicle—a
location easily accessible to him. See Moreno, 821 S.W.2d at 351. Price detected the smell of
burnt marihuana in the interior of the vehicle. A search of the trunk revealed over twelve pounds
of marihuana. Viewing the evidence in the light most favorable to the verdict, we find the
evidence sufficient for the jury to have inferred Buttacavoli's possession of the cocaine. We
overrule the point.
      In point three of case two, Buttacavoli asserts that the court erred in giving an instruction in
the opening paragraph of the charge that did not track the indictment and conflicted with another
instruction. The opening paragraph of the charge stated: "The defendant, Santo Buttacavoli,
stands charged by indictment with the offense of Possession of a controlled substance to-wit: 
Cocaine less than 28 grams." Paragraph 5 of the charge stated:
Now, if you find from the evidence beyond a reasonable doubt that on or about the 18th day
of November 1991, in Freestone County, Texas, the defendant Santo Buttacavoli, did
intentionally or knowingly possess a controlled substance, to-wit: Cocaine of an aggregate
weight including any adulterants or dilutants less than 28 grams, then you will find the
defendant guilty of possession of a controlled substance, to-wit: Cocaine of an aggregate
weight including any adulterants or dilutants less then 28 grams.
Buttacavoli complains that the words "including adulterants or dilutants" authorized the jury to
convict on different proof than that alleged in the indictment.
      Testimony indicated that the plastic straw contained trace amounts of cocaine. The substance
in the Marlboro box also contained cocaine. Possession of cocaine less than twenty-eight gram,
including adulterants and dilutants, is a second-degree felony. Tex. Health & Safety Code
Ann. § 481.115(b). There is no lesser charge than possession of less than twenty-eight grams. 
Buttacavoli could not have been harmed by any error in the instruction in the opening paragraph. 
We overrule the point.
      We affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed November 10, 1993
Do not publish